UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED
IN CLERK'S OFFICE
AUG -8 2011
U.S. DISTRICT COURT
MID. DIST. TENN.

WILLIAM DUNN,
    Plaintiff,

v.,

TENNESSEE DEPARTMENT OF
REVENUE, PUTNAM COUNTY
SHERIFF's OFFICE, et al,
    Defendants.

## Motion Pursuant to 42 U.S.C. §1983 for Constitutional Violations by Employees of the State of Tennessee

Comes now Plaintiff William Dunn, pro se, initiating this action pursuant to 42 U.S.C. §1983 regarding Constitutional violations which occurred during enforcement of the State of Tennessee's Unauthorized Substance Tax (TAX) by employees of the Tennessee Department of Revenue (TDR) and the Putnam County Sheriff's Office (PCSO).

—1—

## Defendants

At this time, Dunn is unable to identify every participant, nor guarantee the accuracy of those preliminarily identified. This is due to Dunn's lack of availability to such information. Dunn will promptly provide this information to the Court as it becomes available. Be it known, however, that this action is against each and every individual, both personally, as well as in their official, professional, or employed capacity, affiliated with either the TDR or the PCSO, whom participated in any way, directly or indirectly, with the illegal and unconstitutional seizures and destruction of the irreplacable property confiscated in relation to any TAX assessment initiated pursuant to the TAX statute, and levied against Dunn since 2005. Those parties include, but are not limited to:

- The Tennessee Department of Revenue
- TDR employee Robert Slatten
- Other unknown TDR employees
- The Putnam County Sheriff's Office

-2-

PCSO employee Randy Roland
PCSO employee Steve Flowers
PCSO employee Jeff Cessna
Other PCSO employees unknown

## Introduction

The Tennessee Legislature passed into law the TAX in order to generate revenue from those found in possession of specific substances identified within the statute. After the TDR began to enforce the tax, a victim of the TDR and the TAX brought suit challenging the validity of the TAX. That suit was decided in favor of that victim plaintiff. The TDR appealed, and the Tennessee Court of Appeals affirmed the lower court's decision. After the Tennessee Supreme Court accepted the case for review, they too found in favor of the victim plaintiff, affirming the invalidity of the Tax, as well as its unconstitutionality.

## Statement of Facts

Dunn was arrested by employees of the PCSO and one employee of the United States Bureau of Alchahol, Tobacco, Firearms, and Explosives on April 24, 2006. The PCSO subsequently submitted written notice to the TDR listing quantities of alleged substances that were confiscated after Dunn's arrest, and allegedly possessed by Dunn.

The following day, April 25, 2006, Dunn was visited by TDR employee Slatten while still under arrest at the PCSO. Slatten served Dunn with notice of the TAX assessment, and demanded an amount in excess of seventy thousand dollars ($70,000), which Slatten demanded immediately. Dunn was not represented by counsel, but made efforts to negotiate the terms and payment plan. Slatten refused such attempts, and made Dunn aware that Slatten was on his way to Dunn's residence, as well as any banking institutions with which Dunn maintained accounts.

-4-

Dunn protested, telling Slatten that Dunn's Grandmother, Ruby Dunn, was at Dunn's residence with Sam Worthington, whom was an employee hired by Dunn to care for Ruby in Dunn's absence. Dunn absolutely forbid Slatten to have any contact with Ruby, and affirmatively told Slatten that Ruby was incompetent due to diagnosed strokes and dimentia, and that Dunn had been named Ruby's conservator. Dunn insisted Slatten contact attorney E.J. Mackie before going to Dunn's residence. Mackie was appointed by the court as Ruby's co-conservator to assist Dunn. Mackie told Dunn never let Ruby talk to authorities without Mackie being present, or notified. Slatten dismissed this notion, and said he would not contact Mackie, and he was going to Dunn's residence anyway.

Dunn subsequently called Worthington, and ordered her not to allow anybody in the house, except Mackie. Dunn warned Worthington that Slatten was on his way, and that she was not to give him any information or access to the residence. Dunn further instructed Worthington to lock the detatched garage doors, as well as the house doors.

—5—

Slatten requested that the PCSO escort Slatten to Dunn's residence. The PCSO granted their assistance. PCSO employees Randy Roland and Steve Flowers accompanied Slatten to Dunn's residence. Upon their arrival, they threatened to arrest both Worthington and Ruby if they were refused entry into Dunn's residence. After threatening Worthington to gain illegal entry, they obtained invalid consent to seize "evidence" from Ruby. There was no mention of the TDR or the TAX. Slatten then confiscated cash and property from Dunn's residence. Dunn's residence is located in the Middle District of Tennessee.

Slatten also confiscated funds, as well as the contents of Dunn's bank vault safety deposit box, from banks where Dunn held accounts. Finally, Slatten confiscated a vehicle from a storage facility. Slatten made no effort to contact the individual whom had rented the storage unit prior to gaining entry by unknown means. The banks and the storage facility are also located in the Middle District of Tennessee.

Slatten eventually returned to the PCSO, and confiscated from the PCSO property room, the cash from Dunn's person at the time of arrest. Slatten then revisited Dunn to inform Dunn of Slatten's plunder. Dunn insisted on written verification of Slatten's actions. Slatten merely explained that receipts were left at the relative places of confiscation.

Upon Dunn's release from PCSO, Dunn contacted the TDR, and challenged the assessment and the confiscations by requesting a conference pursuant to the TAX procedure. Dunn was assured that the items confiscated were safetly held by the TDR until such time as the matter was resolved.

Several months later, Slatten returned to Dunn's residence. Again, Ruby was there only with another employee, Michelle, also hired to care for Ruby in Dunn's absence. Michelle phoned Dunn to alert Dunn to Slatten's presence. Dunn instructed Michelle not to give Slatten any information or access to Dunn's residence. Michelle explained that Slatten had threatened to arrest her if she refused entry, and therefore she felt she had no choice but to allow him entry.

-7-

Case 2:11-cv-00080   Document 1   Filed 08/08/11   Page 7 of 16 PageID #: 7

Dunn spoke to Slatten, via telephone, while Slatten was at Dunn's residence. When Slatten described the the objects he intended to seize, Dunn told Slatten that those objects were in fact not Dunn's, and Dunn insisted Slatten vacate Dunn's residence. Slatten said he did not care, and terminated the conversation. Slatten was accompanied by the PCSO.

Dunn subsequently phoned Brian, the owner of the computer Slatten was confiscating. Dunn had recently borrowed the computer to substitute for the computer seized on April 25, 2006. Brian drove to Dunn's residence at Dunn's insistance, and also on Dunn's behalf. Slatten simply threatened to arrest Brian as well, and ordered Brian to leave. Dunn witnessed the entire confrontation via Brian's cellular telephone. Brian left as ordered, for fear of arrest. Slatten left a receipt of the items confiscated, which Dunn retrieved upon his return home.

Dunn was again arrested on October 30, 2006. Following that arrest, TDR and PCSO employees once again cajoled entry into Dunn's residence. At that time, Ruby was there with a family member. Another com-

— 8 —

puter, as well as other items, were confiscated. Dunn was never informed of this seizure by the TDR. Only Dunn's family told Dunn, but knew no details.

Dunn has remained incarcerated since his October 30, 2006 arrest. Dunn's mother hired attorney Sam Harris to represent Dunn at the TDR conference. Harris apparently rescheduled the conference one time, without Dunn's knowledge, but subsequently failed to appear at the rescheduled time. Harris had abandoned his office, and has not contacted Dunn, or ever responded to Dunn's correspondance.

When Harris failed to appear, the TDR sent a default notice directly to Dunn, then housed in a county jail awaiting trial. The letter noted Dunn's incarceration, and explained Harris' failure to appear, as well as Harris' failure to provide the TDR with the necessary power of attorney, authorizing Harris to represent Dunn. This failure to provide the power of attorney was the stated reason for sending the default notice directly to Dunn.

-9-

Dunn responded in writing to the default notice, in a desperate attempt to prevent liquidation of his irreplacable data and assets, as well as the items that did not belong to Dunn. Dunn has since made numerous written attempts to contact the TDR and obtain the relatavive documentation. Dunn was never provided any specifics of the accounting or calculation of the assessments. Dunn has been unable to reconcile or cooberate any of the vague data provided by the TDR. The default notice listed a date on which Dunn's assets were to be liquidated. The TDR has refused to respond to Dunn's numerous letters.

Dunn dispatched his mother to repurchase, at the public auction, the irreplacable and crutial items confiscated by the TDR. Dunn's mother purportedly contacted the TDR about the location and time of the public auction. Dunn's mother reports that when she arrived five minutes prior to the time the TDR told her the auction started, it had already been completed hours earlier, and Dunn's irreplacable data and assets were gone. The TDR continued to collect the balance of the assessment by seizing the money available in Dunn's inmate account in its entirety.

-10-

Dunn's attorney at the time of the auction advised Dunn there was nothing Dunn could do about the situation. The TDR completely irradicated the digital data from the computer and devices, prior to the auction, without so much as even checking to see what the data comprised. Retrieving the computers became pointless, the data was lost forever.

Dunn has recently become aware that the TAX is and therefore always was Constitutionally infirm and invalid. The TDR and PCSO employees therefore violated Dunn's Constitutional rights in order to enforce an invalid an unconstitutional statute. This is unacceptable, and Dunn has been robbed of irreplacable family heirlooms and data in the forms of digital photos, videos, and audio recordings, as well as other data.

Even had the actors acted reasonably, they still seized items not legally permitted to be taken to satisfy tax debts. Here, the actors acted with malice and forethought, ignoring Dunn's Constitutional rights, and continued doing so even after being fully aware of the Courts invalidation of the TAX, then apparently under appeal. Furthermore, actors ignored

— 11 —

Case 2:11-cv-00080   Document 1   Filed 08/08/11   Page 11 of 16 PageID #: 11

Ruby's medical conditions, even seizing upon her incompetance to further their mal intent. Each actor had a stake, in the form of a percentage of the proceeds seized, which motivated their illegal actions.

## Property Confiscated

Dunn is unable to accurately list each item seized for lack of documentation. These items include, but are not limited to:

- 1992 Dodge Daytona
- Jewerly
- Coins
- Gold
- Unset (loose) gemstones
- Money
- Electronic items
- Digital recorders and cameras
- Computers

Dunn will promptly notify the Court of additional items and information as it becomes available.

-12-

## Damages

Dunn has been severly harmed by the seizure and liquidation or destruction of his assets and irreplacable crutial data. From each defendant, Dunn seeks a sum of ten million dollars as compensation for his loss. Dunn additionally requests the defendants compensate Dunn for any and all fees and expenses associated with this action, as well as any legal and administrative costs.

## Conclusion

Dunn is an incarcerated federal prisoner, and has endeavored to adhere to the Courts rules and procedure. Dunn asks this Court to liberally construe Dunn's filings due to Dunn's pro se status. Dunn initiates this federal action due to real and well documented actions which severly harmed Dunn. Dunn currently has no access to a law library, nor any documentation to support this action. Dunn will notify the court promptly upon Dunn's procurement of any documents or information. Dunn has petitioned for counsel to be appointed to resolve the situation. Dunn

-13-

is additionally soliciting legal advise from private organizations and attorneys, thus far to no avail. Dunn will continue his diligent efforts.

Respectfully Submitted,

*William Dunn*

William Dunn
Reg. No. 18216-075
United States Penitentiary
Coleman 2
PO Box 1034
Coleman, FL 33521-1034

## Certificate of Service

I hereby certify that the foregoing motion was mailed via United States Postal Service, prepaid and first class to the Clerk of the Court at 801 Broadway, Room 800, Nashville, TN 37203, on this the 18th day of June, 2011.

*William Dunn*

William Dunn

-14-

Clerk of the Court
801 Broadway
Room 800
Nashville, TN 37203

RECEIVED
IN CLERK'S OFFICE
AUG -8 2011
U.S. DISTRICT COURT
MID. DIST. TENN.

June 18, 2011

Dear Clerk,

Enclosed please find 2 motions and an application to proceed in forma pauperis to be filed in your court. Please send copies that are stamped "filed" with the case number notations to confirm receipt and initiation of this action if you would. I appreciate your help.

Respectfully,
William D——
William Dunn
Reg. No. 18216-075
United States Penitentiary
Coleman 2
PO Box 1034
Coleman, FL 33521-1034

William Dunn
Reg. No. 18216-075
United States Penitentiary Coleman 2
PO Box 1034
Coleman, FL - 33521 - 1034

 

⇔18216-075⇔
Clerk Of The Court
US District Court MD TN
801 Broadway
Room 800
Nashville, TN - 37203
United States

RECEIVED
IN CLERK'S OFFICE

AUG -8 2011

U.S. DISTRICT COURT
MID. DIST. TENN.